IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| POCATELLO EDUCATION ASSOCIATION; IDAHO EDUCATION ASSOCIATION; INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 743; PROFESSIONAL FIREFIGHTERS OF IDAHO, INC.; SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 687; and IDAHO STATE AFL-CIO,<br><br>Plaintiffs,<br><br>v.<br><br>MARK L. HEIDEMAN, in his Official Capacity as Bannock County Prosecuting Attorney; BEN YSURSA, in his Official Capacity as Secretary of State for the State of Idaho; LAWRENCE WASDEN, in his Official Capacity as Attorney General of the State of Idaho,<br><br>Defendants. | Case No. CV-03-0256-E-BLW<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

The Court has before it cross-motions for summary judgment. The Court heard oral argument on October 27, 2005, and ordered further briefing. Those briefs were received on November 3, 2005, and the motions are now at issue. At

**Memorandum Decision – Page 1**

issue in this case is the constitutionality of the Voluntary Contributions Act. The State has conceded that the Act is unconstitutional except for the ban on political payroll deductions. For the reasons expressed below, the Court finds that the ban on political payroll deductions for employees of local governments, school districts, and private employers violates the First Amendment. However, the Court upholds the right of the State to ban political payroll deductions for its own employees where the State will be paying any part of the cost of the payroll deduction program. Accordingly, the Court will grant in part and deny in part both of the cross-motions for summary judgment.

## FACTUAL BACKGROUND

The plaintiffs – unions representing public and private employees – challenge the Voluntary Contribution Act (VCA) because it restricts their political speech. The VCA (1) banned unions from using dues for political activities; (2) required unions to pay for political activities out of "separate segregated funds" (SSFs); (3) placed restrictions on unions' solicitations for SSF funds; (4) banned payroll deductions for political activities even if authorized by the employee; and (5) imposed criminal penalties for anyone violating the VCA.[1]

---

[1] The VCA does not proscribe the use of union dues for lobbying or member political education. *See* Idaho Code § 44-2603(4). Moreover, the VCA does not apply to unions governed by the National Labor Relations Act (NLRA) or the Railway Labor Act (RLA), which means that the VCA applies to such private employees as agricultural and domestic laborers, and

**Memorandum Decision – Page 2**

The Union plaintiffs filed suit seeking to enjoin the VCA as an unconstitutional infringement on their rights under the First and Fourteenth Amendments. This Court held that the State defendants were not protected by the Eleventh Amendment, and issued a temporary restraining order enjoining enforcement of the VCA. On appeal, the Ninth Circuit affirmed the Court's Eleventh Amendment ruling and remanded the case to this Court for further proceedings.

The Unions and the State have now filed cross-motions for summary judgment. The State concedes that "the definition of 'political activities' in Idaho Code § 44-2602(e) is unconstitutionally broad and that the remainder of the Chapter 26, Title 44 is not severable." *See State Brief* at p. 2. The State argues, however, that the "payroll deduction amendment to Idaho Code § 44-2004 . . . can be given effect since it operates without reference to the existence of a separate segregated fund." *Id*.

By this concession, the State agrees to striking all of the VCA except for its ban on political payroll deductions. The Unions respond that this single remaining vestige of the VCA violates their First Amendment rights because it targets their

---

employees of businesses that fall outside the size parameters that trigger NLRB jurisdiction. *See* Idaho Code § 44-2602(d).

**Memorandum Decision – Page 3**

political speech. The Court will analyze this issue below, using the term "VCA" to refer to the ban on political payroll deductions, the only remaining portion of the original VCA still at issue in these proceedings.

## ANALYSIS

### 1. Summary of the VCA

The VCA amends Idaho Code § 44-2004, the existing statute that requires a signed written authorization from the employee before an employer may deduct from his or her wages any union dues or fees to be paid over "to a labor organization." The VCA amendment prohibits any deductions "for political activities as defined in the [VCA]." The term "political activities" means "electoral activities, independent expenditures, or expenditures made to any candidate, political party, political action committee, or political issue committee or in support of or against any ballot measure." *See* Idaho Code § 44-2602(1)(e). Violations of this provision are a misdemeanor, carrying a penalty of up to 90 days in jail and/or a fine of up to $1,000. *See* Idaho Code § 44-2007.[2]

### 2. Standing

---

[2] The VCA also amended Idaho Code § 67-6605 by deleting those provisions that expressly permitted payroll deductions to be made for a political committee, provided that the employee authorizes such deductions in writing and re-authorizes the deduction on at least an annual basis.

**Memorandum Decision – Page 4**

The State argues that the Unions have no standing to argue the First Amendment rights of private employees. At oral argument, however, counsel for the Unions asserted that plaintiff AFL-CIO represents private employees, and the State's counsel did not contest that assertion. The Court will therefore assume that at least one plaintiff has the standing to represent the rights of private employees. The State does not dispute that the Unions represent both State and local government employees. Accordingly, the Court finds plaintiffs have standing to represent the First Amendment interests of their members who consist of employees of State, local governments, and private employers who are affected by the VCA.

**3.     Scope of First Amendment Protections**

The State argues that the Unions, by seeking to restore the deduction for political activity, are asking the State to subsidize their speech. According to the State, the First Amendment cannot be used to compel this kind of subsidy.

The First Amendment protects an individual's right to be free from government action, but does not create a right that the Government "subsidize the exercise of" those First Amendment rights. *See Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 549-50 (1983). It therefore follows that the State is under no First Amendment obligation to subsidize speech by

**Memorandum Decision  – Page 5**

providing, at its own expense, payroll deductions for the purpose of paying union dues or association fees for State employees. *See Toledo v. Pizza*, 154 F.3d 307 (6th Cir. 1998); *South Carolina Education Association v. Campbell*, 883 F.2d 1251, 1257 (4th Cir. 1989) (holding that "First Amendment does not impose an affirmative obligation on the state to assist the program of the association by providing payroll deduction services").

This anti-subsidy justification becomes much weaker, however, in two circumstances: (1) When the entity benefitting from the deduction offers to pay the entire cost of the program; or (2) When the State reaches out and prohibits local governments and private employers from providing payroll deduction programs.

The VCA's criminal sanctions apply to both of these circumstances. Yet in neither is any State subsidy apparent. In the first circumstance, the State incurs no cost when the entity benefitting pays the entire cost of the program. In the second, all costs will be incurred by local governments or private employers. While the State submitted excellent briefing tracing the connections between the State and local governments, the State did not identify any subsidy provided by the State to local governments for providing political payroll deductions.

For these reasons, the Court finds that the anti-subsidy justification protects only that portion of the VCA that prohibits payroll deduction programs for State

employees where the State is incurring costs to set up and maintain the program. The State cannot use the anti-subsidy argument to justify the VCA to the extent that it applies to local governments[3] and private employers, and to entities that pay the entire cost of the program.

The Court must now determine whether the VCA violates the First Amendment by imposing criminal sanctions in cases where a payroll deduction program for political activities is set up by (1) the State, where the entity benefitting pays the entire cost of the program, (2) local governments, or (3) private employers.

### 4. First Amendment Analysis

The VCA prohibits payroll deductions for political activities. From the expansive universe of conceivable "activities," the VCA singles out the political for special treatment. To determine if a payroll deduction runs afoul of the VCA, and warrants criminal sanctions, the content of the activity must be shown to be political and not, say, charitable.

This sounds like a content-based restriction. However, the State argues that the VCA is not content-based because it applies regardless of the political view

---

[3] Certainly any local governmental entity could decide on its own not to subsidize speech and accordingly refuse to provide a payroll deduction program.

**Memorandum Decision – Page 7**

supported by the deduction: The ban applies equally to conservatives and liberals, Republicans and Democrats.  While that is true, it simply means that the VCA is not viewpoint-based – it nevertheless remains solidly content-based because it targets only payroll deductions for political speech.

This very distinction was made in *Arizona Right To Life v. Bayless*, 320 F.3d 1002 (9th Cir. 2003).  There, the State of Arizona was defending its statute regulating political advertising.  Arizona argued that the statute was viewpoint-neutral because it applied regardless of the political views being espoused, essentially the same argument put forward by the State here.

The Circuit rejected the argument, holding that because the statute singled out political speech for regulation, it was "regulating speech on the basis of content" even though it did not "discriminate on the basis of . . . viewpoints . . . ." *Id*. at 1090, 1010.

To reach this holding, *Arizona* cited *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530 (1980).  There, the Supreme Court stuck down a state agency order prohibiting the inclusion in monthly electric bills of inserts discussing any "controversial issues of public policy." *Id*. at 540.  This restriction was content-based, according to the Supreme Court, even though it "does not favor either side of a political controversy." *Id*. at 537.

**Memorandum Decision  – Page 8**

Some other circuits have reached contrary results.  *See Toledo,* 154 F.3d at 310 (6th Cir. 1988) (holding that a statute similar to the statute at issue here was content-neutral); *South Carolina,* 883 F.2d at 1257 (4th Cir. 1989) (same).  They are not binding on this Court, however, in light of *Edison* and *Arizona.*

The Court therefore finds that the VCA is a content-based restriction because its criminal sanctions apply only to payroll deductions for political speech. Even so, the State responds, the VCA does not directly ban political speech but only restricts one method of soliciting funds to support that speech, and thus should not be subject to strict scrutiny.

By banning the payroll deduction for political speech, the VCA eliminates the "easiest and least expensive way" for unions to collect funds for political speech.  *See Shackleford Declaration* at ¶ 18, p. 10.  Union members are reluctant to use alternatives such as electronic funds transfers or credit card payments due to concerns about identity theft.  *See Shackleford Supplemental Declaration* at ¶ 3, p. 2.  This means that face-to-face solicitations will be necessary, a substantially more time-consuming and expensive effort than the payroll deduction.  The result is that the VCA ban "would significantly decrease the revenues available for, and increase the cost and administrative burden of . . . providing the funds needed . . . to communicat[e] to the public . . . views on . . . political issues."  *Id*.

**Memorandum Decision – Page 9**

This record establishes that the VCA will eliminate the best method for unions to fund political speech. While alternatives exist, they are considerably less effective. With restricted funding, the ability of the unions to engage in political speech will be diminished.

Political speech is at the "core of our electoral process" where First Amendment protections are "at their zenith." *Buckley v. Valeo*, 424 U.S. 1, 39 (1976). The First Amendment protects a person's "right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." *Meyer v. Grant*, 486 U.S. 414, 424 (1988).

The State responds that since the VCA restricts contributions rather than expenditures, it must be analyzed under *Buckley,* which used a slightly more relaxed level of scrutiny to uphold political contribution limits. The State asserts that *Buckley* commands a similar result here.

In *Buckley*, the Supreme Court upheld political contribution limits, stating that the prevention of actual corruption, and of the appearance of corruption, were sufficiently compelling state interests to justify speech restrictions. *Id*. at 26. The Court reasoned that restricting contributions would be only a slight restraint on free speech because the expression is dependent almost entirely on the act of giving, rather than the quantity of the gift. *Id*. at 20-21.

**Memorandum Decision – Page 10**

Importantly, the Court found no evidence that the contribution limits would "reduce the total amount of money potentially available to promote political expression." *Id*. at 22.  On the other hand, expenditure restrictions would restrict the "quantity of political speech." *Id*. at 39.  On the basis of that distinction, the Court upheld contribution limits but struck down expenditure limits.

This distinction cuts against the State here.  The record in this case is different than the record in *Buckley*.  As discussed above, the record here shows that the VCA, unlike the legislation at issue in *Buckley*, will "reduce the total amount of money potentially available to promote political expression." *Id*. at 22.

Moreover, the State has not articulated how prohibiting payroll deductions for political activities reduces either actual corruption or perceived corruption. *Buckley* analogized large campaign contributions to bribes, noting, persuasively, that hefty contributions are used to buy influence.  *Id*. at pp. 26-27.  There was a clear link between limiting contributions and reducing the appearance of influence-peddling.

No such clear link appears here.  The VCA bans *all* political payroll deductions, no matter the size.  The average payroll deduction for a union worker is certainly not large enough to be labeled as a "bribe."  And there is no evidence, or even a common understanding, that corporate officials and union bosses are

**Memorandum Decision  – Page 11**

using the political payroll deduction to fund bribery or corruption.

In *Buckley*, the Court ruled that the expenditure limitations did not "pose dangers of real or apparent corruption comparable to those identified with large campaign contributions." *Id*. at 46. The VCA's ban on political payroll deductions likewise poses no comparable danger of real or apparent corruption. In light of this record, the State cannot defend the VCA under *Buckley* on the ground that it aids the State in furthering the compelling interest of preventing actual and apparent corruption.

Because the VCA restricts political speech, it is subject to strict scrutiny. The State must demonstrate "that the [VCA] is narrowly tailored to serve a compelling state interest." *Arizona*, 320 F.3d at 1010. The State responds that it has a compelling interest in controlling costs of local governments. However, the VCA applies even if the entity benefitting from the deduction absorbs all costs, and thus it does not appear to be driven by cost-saving desires.

Moreover, the record is devoid of any evidence of the cost of providing deductions. Certainly payroll deductions cost something to provide, but the VCA does not ban all payroll deductions, but only those used for political activities. The cost savings from prohibiting this specifically-defined subset of payroll deductions is not a matter of common knowledge, and is nowhere specified in the record.

**Memorandum Decision – Page 12**

Looking beyond local governments, what interest does the State have in reducing the costs of corporate entities that want to use the payroll deduction for their own political activities? Here, the cost-savings rationale breaks down entirely. The State's burden is to make a "compelling" case for cost-savings, and it has not carried that burden in this case.

The State also argued that "a rational legislature could find the system of political payroll deductions do have some coercive elements." *See State Reply Brief* at p. 6. But how? With regard to union employees, Idaho is a right-to-work state – no employer may require its employees to be members of, or pay fees to, any union. *See* Idaho Code §§ 44-2003, 44-2005. And for those employees who have voluntarily joined unions, no employer may deduct any union fees from their wages without their express written consent. *See* Idaho Code §44-2004(1).

The ban on political payroll deductions adds nothing to these substantial statutory protections against coercion. Indeed, the ban could make things worse by forcing unions to engage in face-to-face solicitation, a technique fraught with the potential for coercion. Thus, the Court cannot accept this rationale for the VCA.

The State also asserts a compelling interest in protecting union employees who may, over the years, forget they signed an authorization and lapse into unawareness that deductions are continuing to be made from their paychecks.

**Memorandum Decision – Page 13**

Even if true, this problem would be solved by requiring employees to file an annual re-authorization for the deduction, a solution much narrower than a total ban. But the VCA actually struck down the one existing annual re-authorization requirement, contained in Idaho Code § 67-6605.

Moreover, this "forgetful-employee" rationale would apply to all payroll deductions, so it begs the question, why just ban political deductions? Is there something about political deductions that makes them particularly forgettable? Nothing comes to mind. Indeed, it is impossible to imagine that employees are blase about the money being deducted from their wages. Given the prevalence of automatic deductions in today's world, and the heightened awareness of electronic errors and fraud, it is irrational to assume that employees pay no mind to payroll deductions.

**5.    Conclusion**

For the reasons expressed above, the Court finds that the VCA's ban on political payroll deductions for employees of local governments, school districts, and private employers violates the First Amendment. The Court upholds the right of the State, however, to ban political payroll deductions for its own employees when the State is paying any part of the payroll deduction program. Accordingly, the Court will therefore grant in part and deny in part both of the cross-motions for

summary judgment.  The Court will enter a separate Judgment pursuant to Rule 58.

DATED:  **November 23, 2005**



B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision – Page 15**